May it please the Court, my name is Michael King. I'm here on behalf of the defendant and respondent Asten. Mr. Gilbreth, who is with me at council table, is here on behalf of the defendant and respondent Scapa. I'll be doing the argument for both of our clients. The three-judge panel correctly concluded that the district court abused its discretion by failing to do Daubert balancing, but evidently feeling constrained by this Court's decision in Mukhtar, the panel did not reach the merits and resolve those, but instead vacated, ordered a new trial, and sent the Daubert issues back for the gatekeeping that didn't happen the first time. The question of relief in this case is not controlled by Mukhtar. This Court may and should reach the Daubert merits, and we believe that when you do, you will be persuaded ultimately that the defendants are entitled to a judgment as a matter of law. I will address first the procedural issues presented by the Mukhtar question, and then deal with the Daubert merits. Now, turning to the procedural issues, Mukhtar does not control this, the issue of relief in this case, because in Mukhtar, the defendant was seeking only a new trial. We are seeking judgment as a matter of law. Now, the right of the circuit courts of appeals to grant judgment as a matter of law is firmly established, and has been ever since the United States Supreme Court resolved that question in Neely v. Martin in 1967. Thirty-three years later, the Supreme Court in Weisskram held that the circuit courts could grant such relief after having determined that the district court had erred in the admission of expert testimony. They were not required to remand the choice between judgment as a matter of law and new trial back to the district court to decide. As the Supreme Court explained in Weisskram, it's a question of exercising appellate discretion. Asking yourself, is the district court in a superior position to resolve the question there of the choice between judgment as a matter of law and new trial? If not — So, counsel, are you asking us to actually engage in the Daubert analysis here on appeal? Absolutely. I am, Your Honor, because, and I will now address this point, this district court's not in a superior position here. And if it's not in a superior position here, I think that Neely and Weisskram, building on Neely, made clear that there's a powerful reason for you to do it now, because — Let me ask — if I can ask you this. Over here. Thank you, Your Honor. Judge Fletcher, let me ask it this way. We would — if there had been a Daubert hearing in the district court, we would review that for abuse of discretion. Is that right? Yes. In order for us to go, then, where you want us to go, we would have to conclude that if there had been a Daubert hearing and if information had come out of which we're not necessarily aware at this time, it would have been abuse of discretion for the district judge to admit it. That's a pretty big jump for you to ask us to make. I don't think so, Your Honor, because all I'm asking you to do is take the Neely principle and Weisskram and apply it to this analysis. Just ask the question, is the district court now still in a superior position? It presumptively was when the record was first being developed below. But the record's fully developed now. So is the district court in a superior position to do what it failed to do last time? No. There are three reasons. Counsel, before you go — Yes, Your Honor. Can I just ask one question? Did you make this argument to the three-judge panel, or is this — are we hearing — Oh, yes, absolutely. This is in our briefs. I mean, our push was district court didn't do Daubert balancing, and now we've got to deal with the issue. That's error. The burden's on them to establish harmlessness. And we laid out the case for why these experts shouldn't have been allowed, and we asked for judgment as a matter of law. And it was all laid out. It was based on Weisskram. I think Judge Rollins had been confirming it. I was there, but this argument was not your main argument, as I recall. But in any event, if we disagree with you that MucTAR does not apply, where does that leave you? Well, if MucTAR doesn't apply, then I think you should do what the panel did. But if MucTAR does apply, you should do what the panel did. But MucTAR doesn't apply. First of all, you've got a record that is fully developed on this issue. There was a massive motion eliminating exercise. Those two white notebooks are the record that was developed. There is no indication, there's never been an indication from the plaintiffs that they think, oh, somehow it was an incomplete process and we need to go back to do more. Second, the issues were thoroughly ventilated again during the course of the trial, because we had to try the Daubert issues to the jury. If you would, counsel, would you go to MucTAR? It seems to me that when I review the MucTAR decision, it seems as if the MucTAR panel said, hey, there wasn't a decision made, and then went to a harmless error review. And said, this is not harmless error, and therefore we're going to have a new trial. In other words, what they said was, well, we don't think they made a correct decision here. We don't think the district court ever said what they should have said or ever gave it what it needed to do. But then they went to the further analysis, well, if the district court abused its discretion by not making a decision, then we have to determine if there's harmless error. Are you suggesting that that's what we should do? I mean, it seems to me that there are two ways to look at this. One is, should I engage in a Daubert review, which I'm not exactly anxious to do. But the second is, well, if the Daubert review was not done, should I then say, is there harmless error? Because in every other evidentiary decision that I make, if the decision is not done right, and it wasn't, or you're arguing that it wasn't, it seems to me they say it wasn't, then I go to a harmless error review, and therefore? You look at the evidence. Well, I say, does this evidence, if this evidence sway the jury, or is there enough evidence outside there otherwise, that this didn't make any difference? And this evidence is the plaintiff's case. It's an expert case. You didn't answer my question. I'm not talking whether it is. Are you asking me to undertake harmless error review? Are you asking me to take a Daubert analysis? I'm asking you to do a harmless error analysis, which means that you will be looking at these experts and evaluating their admissibility under Daubert. Now, just a minute. That's not exactly what a harmless error review does. We're not talking then in harmless error analysis with reliability. We're not talking about whether they have relevance. We're saying, is it harmless, given all that was in the case? The only thing that was in this case that got them to the jury were these experts. And it is harmful and not harmless, because if the Daubert analysis is done, and that is the harmless error inquiry that's triggered in this case, the analysis wasn't done, there wasn't gatekeeping, and if you do that analysis, you're perfectly well in a position to conclude that Millett shouldn't have come in, Cohen shouldn't have come in, Brodden shouldn't have come in, and we're done with this case. Now, the reason Muckner doesn't apply, Your Honor, is because, and Judge Oskangli and I think will recall this, I had to check the briefs to make sure, the defendant appellant in that case wasn't asking for judgment as a matter of law. It was only a question of new trial. Was it going to be ordered flat out by the circuit court, or was there going to be a renan for reconsideration of the evidence, and possibly an order for a new trial? We are dealing with a Neely Weisskram situation. We are asking for judgment as a matter of law. That was our first relief thrust request in our briefing, which is before you and which was before the panel. But, Mr. King, in Muckner, weren't we implicitly deciding that not only did the district court err in not conducting a Daubert analysis, but that the district court had not conducted a Daubert analysis. Had it done so, it would have excluded the expert's testimony as unreliable, and therefore, we granted the appellant's request for a new trial, which is what they asked for. Well, I don't... Are you asking us to do exactly the same thing here? No. In that case, there wasn't any express analysis. That expert should have been included. There were concerns expressed about the expert, and the issue was sent back of... I agree with you, but how can we make a harmless error analysis unless we decide that the evidence should never have come in? Otherwise, it doesn't make any sense to remand it for a new trial. What's the material difference between the Weisskram situation, where the error was in doing the balancing, and here, where the error in the first instance is the balancing wasn't done at all? In answering Judge Fletcher's question, I was pointing out that in Neely, you are balancing two considerations. One, is the superior court in the superior... Is the district court in the superior position to make the call? And that's why I was saying, one, we have a thoroughly developed record here in the motion and limiting process, which was replicated at the trial. Two, nothing came out at the trial. The defendants here have not suggested either that there's been a development in the science that might allow them to fill the Daubert gap, nor, as a matter of a more straightforward Neely analysis, have they suggested, well, now, wait a minute, before somebody does judgment as a matter of law, there were some problems at the trial, and we want an opportunity to address that with the district court. They have not suggested that. The second page of their brief, the last page of the introduction of their brief, is just like the plaintiff in Neely, who said, properly instructed jury, fair trial, I want to keep my judgment. So, all I'm saying is, given that Mukhtar is a case where there was only a request for new trial, given the jurisprudence the United States Supreme Court has laid down about the test that you apply as a circuit court of appeals when there is a JMOL request on the table from the appellate, you look at, well, there was error. Now, is the superior court in the, is the district court in the better position? Is there something we need to send back still before we choose the relief question? But suppose Mukhtar had granted, there had been a JMOL, and that was the relief that they sought on appeal. Couldn't the panel have come out exactly the same way? Yes. Doing a Neely analysis, if concluding that, no, there was error, but there's something about the record here. The, the, the, the, and what Neely says is, look to see whether the prevailing plaintiff is saying, oh, something happened down there that was wrong. I know we won, but there was evidence that was excluded. And you know, that changes the balance. And you're not familiar with that. We need to go back to the district court and make the pitch that if, if we're going to lose something, we lose our judgment, but we get a new trial. But as the district court is not making any such suggestion, they're saying the case was properly tried. It was properly instructed. It was a fair proceeding. We have no quarrel on our own that has fairness implications. But your argument is the same argument that we heard in Mukhtar, which is that the district court's failure to conduct a Daubert hearing, which is more than a procedural error, because the Supreme Court has said that that is an abuse of discretion if it's not done. Right. It necessarily requires the court on review to determine if that hearing had resulted in actual findings, the findings should have been that the expert's opinion should not have been admitted. Yes. And if the opinion had not been admitted, then what would the effect have been on the plaintiff's case? And I agree with you, if we exclude all the expert testimony in this case, there's nothing left. Oh, if you exclude Dr. Millett alone, there's not going to be anything left. Because their causation expert has said, well, rule out the ambient range evidence. Dr. Millett is the only witness they put forward to demonstrate that our product caused releases in excess of ambient range. And Dr. Millett has massive reliability and relevance problems. He didn't even follow his own protocol. You don't have extrapolatability established. In Schuttle, you said that the absence of extrapolatability, when you've got a question about a foundational scientific basis for the opinion that doesn't match up with the facts of the case. So you've got to have a demonstration you can extrapolate. In Schuttle, you said if you've got that problem, it's over. The expert's out. And that is, frankly, a demonstration, I don't think this is going to be such a big deal. Well, counsel ---- Mr. King, we've talked about two alternatives. Yes, Your Honor. Granting you judgment as a matter of law. Yes. A new trial, which is a possibility. Yes. And then there's the middle ground, or a different ground, and that would be a remand on the Daubert issue, so that would then come back to us in the normal course of things. And I would appreciate your comment on why a limited remand for that purpose would not be appropriate. Because it frustrates the policy identified in Neely and Weissgram, which is, if the district court is not in the superior position, you can do the job yourself just as well. And ---- But we're not mandated to do that. No, but there was a test outlined in Neely and Weissgram. You are balancing two competing interests. Justice Ginsburg's opinion about this is very, very clear, because there's an on the other hand, if the district court is not in the superior position, and you send it back nonetheless, Your Honor, you just put your finger on the key here, and we'll be back. And that means extended proceedings and delay. And that is contrary to the plainly expressed policy recognized in Neely that we've got to also balance the imperative. Yes, Your Honor. Excuse me. When would you be back? Let's take the middle hypothetical. Yes. And you are now back. You go before the district court. And, of course, the district court says, direct a verdict, or you get your JMR, then that's the end of the case, and they'll come back. Right. So that's how we get back that way. I understand that. Let's say the district court says, I've done the balancing, and the arbitration is fine, then you're back that way, right? Yes. But what if the district court says, new trial? Well, we're not going to come back, and they can't come back as a matter of rights, so then there's going to be a new trial. Intervening trial, which would wash out this issue, or would it? Well, it's difficult to imagine. Can you then take an appeal after the second trial, or does this issue die if we don't handle it now? Well, if you don't handle it now, and we go back, it's difficult to imagine if the court sided with us that there'd be any other result than JMOL. I've just given you the basic court description why. If the district court didn't side with us, and said Millett's fine, and Brodkin's fine, and Cohen's fine, well, then the district court will reinstate its judgment, and we'll be up here saying there was an abuse of discretion. I understand. Now, I'm trying to imagine on this record some sort of middle ground where we end up going to a trial. Well, district court says, I made a mistake on Darbert. Yes. And I'm not going to give you judgment, but I will let you have a new trial. Ah, well, then we will be coming back, because suppose we have a new trial and we lose anyway, and there's a verdict. We're going to be coming back saying we should have gotten a JMOL, because it was an abuse of discretion to say, with these experts out, they get to go to the jury anyway? Will that issue be preserved after the second trial? Yes, it will be preserved. On summary judgment, it's not. No, but it will be preserved, because I think in this context where you're sending back for a limited remand, and the district court says, on this evidence, I'm going to order a new trial, these experts shouldn't have come in, but I'm not going to give you JMOL. I'm going to order a new trial. Now, you could avoid that by making your instructions very clear, the scope of the remand opinion saying, if you conclude that these experts are out, we see no rational basis for ordering a new trial. My question was, the issue would be preserved. I mean, the answer to the question I asked is, the issue would be preserved, but at the cost of a new trial. Yes, and that's why I want to end the interview. That's your answer, okay? I think, yes, that is my answer. And let me take that answer and go back to Judge McEwen's inquiry, because, Judge McEwen, you referred to the ordinary course. This is where Neely and Weisskram are very clear. Your discretion under Neely and Weisskram, where you have decided that there was an error, it affects evidence, and you conclude it is not harmless because that evidence shouldn't have been heard, your discretion always is to balance on the one hand, well, is the superior court in the position to make the call, is the district court, sorry, in the superior position to make the call? Because if it's not, that kicks in the imperative of speedy and efficient litigation. And this whole business of saying, we don't want to do this, make the district court do the job, go back there, maybe you'll come back to us later, is contrary to the policy of Neely and Weisskram, which is, look, if the district court's not in a superior position, we need to do this now. And I will say ---- Let me ask you about that. Yes. Because as I hear you, everything's in those two little notebooks on your desk. For the motion to eliminate proceedings, correct. And they're also on our iPads and wherever. But is it clear that the Daubert hearing would be limited to that, that it would simply be on the pleadings, on the paper, would there potentially be some testimony? In other words, different district judges conduct these Daubert hearings differently. So I'm somewhat at a loss to completely buy into the argument that everything's in your two notebooks. Well ---- And that we're just going to do exactly what the district court wants to do. All right. Those two notebooks are the motion to eliminate the jury. Well, I, you know, as a metaphor, it's a metaphor. And we've cited the trial transcript to demonstrate both that, you know, these issues were exhaustively presented. We had to try the factors to the jury. In this case, we asked for, quote, a Daubert hearing, close quote, and we were turned down. And they only ---- And I didn't want one. Well, no. They didn't want a Daubert hearing unless they lost, and then they got him back. I'm saying, in your exercise of discretion, look at this record and ask yourself, where is any indication that a hearing with live testimony from these experts is needed now? Where is there any indication of one of those factors present here which argues for deferring to the superior position of a trial judge? Nothing. We have a thoroughly developed record. We developed it in limine, and we developed it at trial. They have never suggested, oh, there's new developments in the sciences. They have never suggested, well, as you can always do when you're facing a JMOL demand in your brief, you can say, well, if you decide you're on the verge of flushing us, send us back for a new trial because here's the situation. There was this witness or there's been this new development. Their statement in their briefing has been as definitive on this issue, as definitive as the statement of the plaintiff in Neely. But if that's so, counsel, why are you objecting so to this remand for a new trial? Your Honor, I hit a triple in the front of the panel, and I think that my clients are entitled to a home run. But just a minute. Just a minute. If, in fact, I suggest that the district court has abused its discretion by not ruling, and I find there's harmless error, then, as they did in the Mukdar case, I remand for a new trial. At that point, you have a chance to present all this good stuff to the DJ. Having been in your position a few times in Idaho, I'm sure that I can find there will be some DJ who might give them more chance to put on evidence, and with other witnesses, as best as your notebooks will suggest. I'm just saying to you, if I follow through the procedure, I'm wondering why it is at this point I have to say, well, there's just nothing I can do except to side-daubert. If I find harmful error, I can reverse and remand for a new trial, just as we've done before. But the United States... And at that point, well, I don't find any case law that suggests I can't do this. Well, I think Neely suggests that if you don't, if you cannot find the district courts in a superior position to evaluate the daubert issues... Well, but, just a minute. Then I think it is an abuse of appellate discretion. I don't have to. All I have to say is they didn't make a correct decision, as I do in every evidentiary decision I make. They didn't make a correct decision, and it's not harmless, and therefore, send it back. It's a new trial. I disagree, Your Honor. What's my best case for what you're saying? Neely... Neely and Weissgram. Do not say that. Neely did say that there is a policy imperative of speedy and efficient litigation... That's your best argument? Weissgram took it to the next level with the experts. I do that every day with evidence. I constantly, if the evidence is not harmless, I send for a new trial, and Neely has never been something the Supreme Court has overturned me about. Weissgram says if you find the expert witnesses are deficient, and that's the case, and there's not a superior position district court on the question of relief, you should grant JMOL. And I'm saying the situation here is a distinction without a difference. Mr. King, let me ask you this question, and I'll pose the same to Mr. Talmadge when he gets up. Is this the kind of a case... I'm looking at your notebook. I see about 8 inches thick worth of papers in your two white notebooks. Is this a case where we conclude the district court committed error, we send it back, and Judge Lasnik says, instead of just giving it to the jury, I can't figure out whether this is or is not good science, that the district court might wish to appoint a court expert to assist it in reading your two 8-inch thick notebooks and looking at the transcripts and then giving his or her opinion to the district court as to whether this is admissible under Daubert or not? All I'm asking is that this court first look at this record and say, do we really have a situation where any of these hypotheticals are at all reasonably likely? Because if you conclude that none of these hypotheticals about the district court might do this and the district court might do that are reasonably likely, and if you conclude that the district court has no superior position over you, and you have a party who has never suggested, oh, we need more, we need to supplement the record, you know, before you do JMOL, send us back for a new trial and give us an opportunity to supplement, to nonetheless say, I'm not going to give you defendants at JMOL. I'm going to boot it back to the district court, is to prolong a case unnecessarily, and I think that conflicts with Weisbrot. But in response to my suggestion, the district court would still have the opportunity to grant you judgment if the court-appointed expert came back and said, you're right, this is junk science. It should never have come in. Why do we need to complicate a case with this if there is, if you can, if you do the threshold inquiry and conclude the district court isn't in a superior position to deal with this, it's thoroughly ventilated, and we can do this ourselves, and in fact, it's a quick one, two, three. Brodkin, ambient range. Bullett, out. No evidence in excess of ambient range. Case closed. And if I may, I'll reserve my five minutes and a few seconds. Okay. You have got it. Thank you. We'll hear from the other side. Thank you, Your Honor. May it please the Court, Phil Talmadge here representing the estate of Henry Barabin and Geraldine Barabin, joined at council table by a Sydney tribe from my office. It's important, I think, for the Court to note that the late Henry Barabin died of mesothelioma, an invariably fatal asbestos-related cancer. He contracted while working 33 years for Crown-Zellerbach, many of those years in direct contact with the papermaking machines that used defendants' asbestos-containing products. He cut those dryer felts, he dragged them across the floor, and that released asbestos into the air. He further blew out the machines, and that use of air caused the asbestos to be in the air as well. The issue that's before the Court now is the question of whether the District Court conducted an appropriate Daubert analysis and what the remedy is for that, if there was a problem in the District Court's conduct of the Daubert-related hearing. We note here there was a 14-day trial and a verdict in favor of Mr. Barabin. We also note that when the defendants stand before the Court and say, first of all, that there was a situation in which the experts were called upon to testify that every single exposure was causative, or that the District Court here punted on the idea of any kind of Daubert hearing, that's a misstatement to the Court. Well, Counsel, didn't the Court say that it was just going to let everything in and let the jury sort it out? No, Your Honor. He did say that at one point. But I want to hasten to point out to the Court several things that were in this record. First of all, in the order dealing with the motions in limine, the Court went through the Daubert analysis. The Court cited to Daubert, cited to Reliability, went through the analysis, and decided that the expert testimony of Dr. Millett and the testimony of Mr. Cohen was something that he needed to address and did. But would you point us in the record to where the District Court made a reliability determination regarding the experts? Specifically, Your Honor, excerpt of record page 12 in connection with the order denying a new trial, and specifically in connection with the motions in limine. After the trial? No, this was before. This was in connection with the motions in limine. I thought you said the order denying a new trial. He did as well there, and I was going to point out to the Court that's excerpt of record page 69 where he addressed Dr. Millett and Mr. Cohen at length in the motion in limine order. He discussed Dr. Millett's reliability at excerpt of record page 71. And specifically... What did he say about the reliability? He mentioned reliability specifically in connection with Dr. Millett. It was something that he addressed in that record and addressed in the context of Dr. Millett's testimony. So, Mr. Talmadge, are you reading... The troubling language to me is at ER 70, line 18. Correct. Where he notes that there's obviously a strong divide among both scientists and the courts on whether such expert testimony is relevant to asbestos-related cases. And then he says, in the interest of allowing each party to try its case to the jury, the court deems admissible expert testimony that every exposure can cause an asbestos-related disease. Now, I mean, you could, I suppose, read that as suggesting that the court has, in fact, done the Daubert analysis and has decided that it is relevant and it is reliable and I'm going to let it in and the jury can decide which experts they... And that's our position, Your Honor. In fact, Judge Lasnik is an experienced trial judge. He's been around the track, both in the state courts and in federal court. He's a very experienced, well-regarded trial judge. You note, in the motions in limine, he addressed the issue of Daubert, specifically citing the appropriate reliability analysis that he needed to go through in Daubert at excerpt of record page 69, and he did mention Dr. Millett's reliability at ER 71. But I guess, counsel, I'm a little troubled, as evidently my colleague is, is that when he talks about the Cohen decision, he says, I don't think I need a Daubert hearing, but I'm going to reverse myself on that and then allow Kenneth Cohen to testify. I think plaintiffs didn't do as good a job as they should have done, but they've never had Cohen not be allowed to testify before, and that got their attention. Under these circumstances, I'm going to let it in. That doesn't sound to me like he has in any way made a Daubert determination. He's just said, well, they didn't do a good job, and the first time they were attacked, they didn't do a good job at all, and I just think it's fair to let it in. That isn't a Daubert determination. Your Honor, it's important to note that in connection with Mr. Cohen's testimony, he was an industrial hygienist. His testimony related to the concept that formally is called in the record re-entrainment, but it's a very simple concept. That is, if you have fibers in the air, when you have further blowing around the fibers, the fibers stay in the air. This is something that is routinely testified to in Washington state courts, a point that, of course, defendants don't want to talk about. They want to talk about the law of Texas, they want to talk about the law of Utah, but they don't want to talk about Washington state law and causation, which doesn't use the traditional but-for-causation analysis. I can understand your argument, but again, I'd like to see the district courts say, hey, based on Washington law, I think this is good enough for this expert to talk about cause. Because having had to defend these cases and to present them, it seems to me one has to have an expert that says, this causes. And it seems to me that what the good judge is saying is, Cohen... The plaintiffs really didn't know what they were getting into on Cohen. And if he's the only cause expert, I'm only just letting this in because they don't have any other witness and I think they ought to get to the jury. Your Honor, I don't think that's what he did here because the point I think I was striving to make was this. This issue of Dalbert, the issue of the admissibility of these expert witnesses was something that permeated this trial. It came up in the context of the order on the motions in limine. It came up in the context of the post-trial motions, both the motion for judgment as a matter of law as well as the motion for a new trial. And Judge Lasnik spoke to these issues. He spoke to the fact, for example, that Dr. Brodkin, the doctor, the medical doctor who testified to causation, essentially testified in the same fashion as the defense medical expert on causation, Dr. Samuel Hammer. If I were to read something from Judge Lasnik in which he had said explicitly, I'm not going to allow Dr. Cohen to testify as an expert on very much because of the reasons he gives in the limine order about the end of the mail order, Ph.D., and so on. But I am going to allow him to testify on one thing as to which he may be an expert irrespective of his Ph.D., and that's whether or not once the asbestos is let loose in the mail, it tends to stay in the mail, tends to move around, but it keeps, I guess, the jargon as reentrainment. If I heard or read Judge Lasnik say that explicitly and say why he thought he was sufficiently expert to testify on that, I'd be quite happy, but I haven't read that. Your Honor, excerpt of record pages 28 and 29, Judge Lasnik specifically noted that the reentrainment testimony from Mr. Cohen was never contradicted by the defendants. Never contradicted. Yeah, yeah, but that doesn't necessarily mean he's an expert qualified to do it, nor have I heard or read Judge Lasnik giving a very explicit notion as to, okay, here is why under Daubert he is competent to testify on this. My point, Your Honor, in bringing to the Court's attention the fact that there was a whole train of orders that the judge decided, Judge Lasnik decided, was to point out, I think, ultimately, why the Mukhtar rule is an inappropriate one and why the Court should adopt the rule that was suggested by Judge Graber in her concurring opinion in this case. In this particular set of circumstances, the defense wants you to believe that this issue was one in which the judge absolutely punted on Daubert, that he didn't do anything to assess the validity of the science, the validity of these witnesses' testimony. You look at the judge's order, he addressed these issues. He addressed the issues in the order on the motions in limine, he addressed it in the post-trial motions at length, and he addressed it in the context of Washington law, which I note does not require quantitative exposure to toxic materials. Qualitative exposure is sufficient to establish circumstantial evidence of exposure for purposes of causation under decisions of the Washington Supreme Court like Lockwood. But if we find, Counsel, that the district court's Daubert analysis was inadequate, do you agree with the contention that the record is now complete, that the district court is in no better position to conduct an evaluation than we are? No, I think, Your Honor, in fact, the district court's involvement in this is important because the district court had the opportunity to sit through the entirety of the trial. He saw these witnesses testify. He had the opportunity certainly to have some record, but the judge may decide that there might be an appropriate need for additional testimony on this record. And certainly Judge Tallman asked the question of Mr. King and I answer it as well here that if the judge thought having a special master to further elaborate on the record was something that was appropriate, that's part of the judge's flexibility in deciding a Daubert issue. As this court has stated over and over again in cases like Alatorre and others. How would he do that? The jury's gone, right? I mean, at most, the court appointed expert or master could help the judge determine the Daubert issue, but if the determination is that the testimony doesn't need Daubert, you can't sort of add an expert. You'd have to have a whole new trial, right? No, I don't think so, Your Honor. I think the suggestion from Judge Graber in her concurring opinion was that there should be a conditional vacation of the judgment with a remand for further findings by the district court on the Daubert issue and those further findings would decide whether or not the vacation of the judgment was something that was final or whether the judgment stood. But we don't know then how the jury would have ruled if in fact the Daubert finding had been made prior to the case going to the jury. But I think the whole exercise we're having here, Your Honor, is a question about the gatekeeper function that the district court is supposed to be providing. If the district court thought it was doing the gatekeeper function appropriately and did not, is the appropriate remedy the elimination of a 14-day trial, the results of a 14-day trial, or is the appropriate remedy as a matter of policy one in which we give the district court the opportunity to have the appropriate response to the evidence of the district court. Well, the playout would play out as a practical matter if it were to go back for a remand on Daubert and the judge conducted a more extensive Daubert hearing and hit on all fours each of the criteria laid out in Daubert. If Judge Lasnik determines that these experts are admissible, then you'd be in exactly the same place that you were with the jury trial, correct? Correct. The jury's result would stand. And then Mr. King would be back here arguing that issue and others. If Judge Lasnik were determined that he was mistaken and that one or more of these witnesses should not have been at trial, then what do you think the result would be? I think under the circumstances if the judge were to conclude that I think the key witness is probably Dr. Millett, whose testimony was as to the quantum of asbestos fibers that were in the air, if he were to conclude that Dr. Millett's testimony was inappropriate, that he was not a witness whose testimony was somehow reliable, then it would probably result in the vacation of the judgment standing, Your Honor. And a new trial? That would be the result. Pardon? And a new trial or just judgment in favor of the defendants? No, I think it would probably in those circumstances be a judgment in favor of the defendant, but that would be something that the district court Discovery is over. Yeah, the district court Witnesses out. End of game. The district court would order it. And, you know, Mr. King is happy to talk with the court. Why not do it here? Why not do that? Why not just do it here? I don't understand. Because It's one thing if your answer would have been in that point to get a new trial, and I'm not saying you should, but if that had been your answer, that's the answer I thought you would give, then I'd say, well, you know, there's a reason. But if the answer is all the district court would do is what we can do here now, why not short circuit a second appeal? Just do it. But that's assuming, Your Honor, that the district court didn't feel that there was a need for additional testimony and that there might not be a need for a special master or something to assist in developing the validity of the scientific evidence. The point is, this is a matter that the district court should decide. It should indicate that, I mean, this is a question of whether or not this expert is or is not qualified on the job. What reason is it to speculate that the judge might need a special master? I mean, this is really quite unusual. Why is this the kind of thing we look at and we say, we don't need a special master? This is pretty clear one way or the other. We decided, and bam, well done. Why prolong the agony? Because, Your Honor, we talk about the district court's conducting the gatekeeper function. The district court's having first- And if the district court had done that, then you'd be in that situation. But district court, I mean, again, I'm not saying how we're going to decide this, but assuming that we conclude the district court didn't do what it should have done, you're now no longer in the district court. You are now in the court of appeals. The district court didn't do what it could have done or should have done or had a chance to do, and why isn't the appropriate way given the current state of the record or the current state of proceedings for us to do it ourselves? Because the district court's closer to the evidence. The district court is closer to having heard the trial testimony. The district court has had the benefit of that. That's- Mr. King, as I said, is- What does that have to do with the Darwin issue? Well, because it's something the United States Supreme Court in the Unitherm case in a footnote made explicit with respect to Neely and Weisgram that this is something that we should be cognizant of, that is, that the opportunity for the district court to have its input even post-verdict under circumstances like this being closer to the circumstances of the case. Counsel, do you agree that the record is closed, so to speak, in terms of what the trial judge, Judge Lasnik, would do if we went that way, in which case we could also look at that same record and decide it ourselves? Is there a difference? Your Honor, I don't know what the district court would say in terms of the evidence that was adduced, but my suspicion- But isn't it too late to add additional evidence at this point? Well, I mean, on this gatekeeper function issue, I don't think so. You don't have the benefit of the district court's complete rational- rationale for the decision that the district court entered into. Isn't that the problem, though, that we don't have- the possibility of having a remand? That's why it's appropriate for a remand to occur. It's not an all-or-nothing proposition, is it? Upon remand, the district court would then have the option to conduct the Daubert hearing anew, and he could say, well, under the factors set out by Daubert, I think this portion of the expert's testimony is sufficiently reliable, but yet there are other portions of his testimony that are without adequate foundation. So- Certainly. Now that I've conducted the hearing over again with regard to each witness, here's what they are and are not going to be allowed to testify to. I would think in that instance, unless he thinks that the evidence would be insufficient as a matter of law, that he would then permit a retrial and the expert's testimony would then be narrowly circumscribed as the district court feels is appropriate. I think that's exactly correct, Your Honor. And if- if I could point out, this court has- has addressed these kinds of issues with respect- I'm sorry, but that's not the answer you gave to Judge McEwen's question. No, you were- Well, if the- if the district court- It would be over. He said it would be over. If the district court found that there was insufficient evidence to support the jury's verdict as a result of the district court's determination on Daubert, yeah, it would be over. But I think the question from Judge Nguyen was a question about whether the judge- the district court judge under these circumstances could- could come down absolutely this way or a particular way. The judge could come down on a number of ways on the four witnesses. As I understand- As I understand your testimony, Counsel, this is a case where you're essentially conceding is dependent on expert testimony. So if we were to remand the case and Judge Lasnik decided that he was wrong and the testimony should not have been admitted, then that's game over. I think that's right. But if there were still portions of the expert's testimony that would be admissible upon a- a new review under Daubert, then potentially there could be a retrial. Correct? I think that's correct. And the thing that- Any reason we can't do that? We can't look at it and say, look, if all of it is out, it's out. If some of it stays in, we send it back to the district court to have a new trial if it chooses to do that. Your Honor, I think- Or we decide whether a new trial would be worthwhile. Any reason we can't do that? Well, I think it's important to have those findings, Your Honor. The district court here went through a Daubert analysis. What findings? Pardon? What findings? The findings from the district court as to the district court's analysis or rationale for its determination with respect to the gatekeeper function as to these witnesses. But if we have some concerns that the findings were not adequate, where does that leave us? Well, it leaves us in a position, Your Honor. It leaves this court in a position, Your Honor, where it needs to have some articulation from the district court as to how it arrived at its conclusion. Why? Why can't we just automatically say, okay, he didn't give us enough, it's an abuse of discretion for failing to do it, and therefore we have a harmless error review? That's what we do in every other evidentiary decision. Well, Your Honor, I don't think you do that in every other evidentiary decision. When don't we? Cordova. You have a- I read Cordova. I'm still saying, when don't we? It seems to me that in every evidentiary decision, when we decide the district court has done it wrong, our next verse is not to send it back to have the district court tell us how they should have done it. Our next verse is to say harmless error or not. And if it's harmless error, well, then we just affirm. If it isn't harmless error, then we say, most generally, new trial, but since you say we should grant judgment, we could grant judgment. But in Cordova, Your Honor, you have a circumstance where the court had a per se rule with respect to polygraph evidence. You had a district court that should have been aware of this court's position in Amador Galvin with respect to eyewitness testimony and Daubert. It wasn't. It didn't conduct a Daubert analysis at all. You know, I think there may be two possible layers of harmless error analysis. One might be strictly confined to Daubert. That is to say, if there was an error in conducting the Daubert hearing, we remand. There's a new Daubert hearing and the judge says, well, I now conduct the hearing. The first error was that I didn't do it, didn't do my findings, but now after having done it, I find the evidence is properly admitted, so it was a harmless error. The second layer of harmless error is that some of that Daubert expert testimony or all of it shouldn't have come in and then the question is whether that was harmless. But there are two variations on harmless error. I think that may be correct, Your Honor. This is a difficult set of circumstances. With all due respect to Judge Smith, in circumstances where you have remands take place, let's take a series of determinations by a trial court with respect to attorney fees. In many instances the court's going to remand to the district court for the entry of findings of fact and conclusions of law on the question of attorney fees without invalidating the request made by the party for award of attorney fees. But I've never found that to be in a Daubert situation. It's not a Daubert situation, but it's analogous. I don't know that it's analogous. And Daubert is an evidentiary situation. Not a situation where I'm determining whether there's attorney fees or not. That's why I'm posing the question. I don't know what to do, frankly. And I want you to help me. But it seems to me that Daubert is evidentiary. And I don't understand why we don't deal with it like every other evidentiary. And if, in fact, the district court had not allowed the testimony, then at that point there's no way I can say one way or another and I send it back and the district court does something. But if, in fact, the district court allows the testimony and they testify to the full extent, I can make a determination as easy as he can whether it was good or it wasn't and whether it was harmful or whether it wasn't. Can't I? Well, in this particular case, the judge did address a number of the elements of harmless error in any event. And the judge addressed, I would point out, not only the witnesses that were, the expert witnesses that were presented by the plaintiffs, but also considered the expert witnesses presented by the defense. And that's something the defense wants you to lose sight of in this particular case. Dr. Samuel Hammer testified essentially to the same types of positions with respect to exposure as did Dr. Brodkin, the expert that was presented by the plaintiffs. Under the circumstances, and Judge Lasnik recounted this in his post-trial orders, under the circumstances, there was no, there was no harm to the evidence coming in. The defense keeps wanting to tell you that what was being done by the plaintiffs below was every single fiber is causative. Every single fiber is causative and that's the nature of the testimony. Judge Lasnik specifically said no such testimony came in. Harmless error again, Your Honor. But no such testimony came in. That was not the essence of the testimony presented by the plaintiffs' expert witnesses nor by the defense expert witnesses in this case. And notwithstanding all of the fuzzing of the record that's being done by the defendants here, that was the nature of the argument that was presented to the district court. I think it's important for the district court being on the ground dealing with those kinds of issues and being familiar with those kinds of matters to have the opportunity to give a clear-cut understanding of why the judge did what he did in connection with the four expert witnesses. And I note for the record as well, we don't have a lot of argument that's been presented by the defense with respect to Dr. Brody who's the cellular biologist. That testimony is not, we don't have a lot of argument about that. We have Dr. Brodkin who testified essentially similarly to their own defense expert. The question was Dr. Millett and the big argument is, well, did he conduct a laboratory test as opposed to a real-world test? And the trial judge in this case made a specific notation in the record in the post-trial orders that you couldn't do a real-world test because in the mills you don't have asbestos in dryer felts anymore. You don't have the opportunity to do destructive testing. He was under a limitation as to what he could do. And the defense's own expert on these issues also presented testimony from a laboratory. So when you talk about the glove box testing and all that stuff that you've heard from the defense, that was what the nature of that testimony was below. The point is I think it's appropriate under the circumstances for the court to give the district court here where the district court did an analysis under Daubert if the court concludes it was an inadequate analysis under Daubert the opportunity to do the one to do the additional findings that would be appropriate for that analysis and have that judge who's close to the record undertake that. That's the appropriate conclusion that the court should have under these circumstances. If you're through with that issue I'd like you to address one other issue maybe. Certainly. And that is about the allowing the defendants or allowing the plaintiff to suggest that she just hoped she didn't break down. She was able to continue taking care of Henry and securing the proper things that she needed to take care of him. She just didn't want to be left destitute. Now it's my understanding there were motions in limine. Number nine you requested that the defendants be barred from referring in a way to any collateral source of income received by your client and he granted it. The defendants requested that all the parties be prohibited from referring to the financial circumstances of either party. You agreed and he granted it. And then she comes in and starts talking about I don't want to be left destitute. Now I know what the judge said on that and I also know it's an abuse of discretion. But I also know that now I have in front of me that the normal verdict in this case is not even close to what she got. Why is that not an abuse of discretion when he's given two motions in limine he said don't talk about source of income and they then want to put in all the other income that she did get and she argues I'm destitute. Well your honor let me point out a couple of things I think for the record and this is something again the defense has not talked about of course. First of all they never objected to the testimony. No objection to the testimony. No request for a curative instruction from the district court. No cross examination of Mrs. Berubin about these issues. So did they preserve the issue for review? I think not. In addition you're saying that because they put in a motion in limine said you can't talk about it and you put in a motion in limine said nobody can talk about what she did get and the court has already granted that and that testimony came up that it's error for the district court then that it's okay for the district court then to say I don't think she's opened the door and they can't appeal that after two motions in limine? They didn't raise it your honor at the time. They did in the motion in limine. But they didn't object at the time the testimony was had. They waited four days. They asked to put in testimony on their own about that because she'd broken the issue. They didn't cross examine her. They didn't cross examine her. They didn't request a curative instruction. They didn't object. They waited four days post testimony in which to raise the issue. And let me point out as well under Washington law Washington has an unusual procedure where you have all these settlements that might take place as an offset to any verdict that might be had by the prior fact. In this particular set of circumstances there was a substantial offset to the jury's verdict from these prior settlements. So in effect what they wanted to do was have a double opportunity to reduce the jury's verdict. They got the benefit of the offsets for all the settlements that occurred which was the genesis for this testimony about collateral source and they wanted to have the opportunity to get the jury to reduce the verdict by saying well look what she did. She's already Well it seemed to me that that was just what you were taking advantage of as well or at least your client. She was saying well I didn't get any money even though there will be a reduction thereafter but I want a lot so that the reduction won't take much out because I'm so destitute. Well I think the point here Your Honor is they had an obligation to preserve the error for review they didn't and they had the benefit In the face of your motion in limine why wouldn't a rational defense attorney have not cross-examined because to do so would have violated the court's ruling on your motion in limine. Why wouldn't a rational defense counsel have raised an objection immediately to the testimony Your Honor? It might have but is it required? I think it is Your Honor. Under our case law. Even with a motion in limine? So it's like the motion in limine goes out the door? No I think you have an obligation to raise that issue to preserve the issue for review but again let me point out when we talk collateral source here they want a double opportunity they want the opportunity to reduce the jury's verdict and they want the opportunity to get the benefit of these offsets that Washington law affords them so it would be a double reduction that would be unfair. Help me out a little bit review the betting what was the question that led her to say or what was the question that preceded her saying I don't want to be left destitute? Was the question do you want to be left destitute? No. Or was it some other question? It was nothing nothing that explicit Your Honor. It was a very general question and she volunteered the statement as I recall. I don't have that with me right at the counsel at the rostrum but it was something that was a very general question and she volunteered that statement. Okay. Thank you. Thank you Your Honor. You have about five minutes Mr. King. Thank you Your Honor. Five minutes and change. Let me address this issue the collateral source issue. Basically you're told well yeah it's a problem but we didn't raise it. That's not correct. I'm surprised. See page 63 of our brief RT 111 and 1112. The ruling had been violated. The evidence was in. We asked to put in the counter evidence let's be fair here and we were told no. Now. Did you object at the time? No. You didn't object contemporaneous with her statement. Exactly. It's his wife. I mean my gosh we're not going to do that. We're entitled to rely on a clear motion in limine and so we then said okay look it's in now give us this offset and we're told no. The door had been open and then it slammed shut in our faces by the judge. I want to quote something from counsel's argument because you have an incredibly important admission here. The key witness is Dr. Mollett. If he's not if he's found not reliable you're going to vacate the judge the district court's going to vacate the judgment and grant judgment as a matter of law to the defendant. I think I've got that right. That is my point. This is not so complicated a Daubert case. You have the fact that Dr. Brodkin says you can't count exposures over ambient range. The only witness they offered to prove release in excess of ambient range was Dr. Mollett. Dr. Mollett is unreliable. In his testimony Dr. Mollett doesn't have fit with his testimony. Dr. Mollett should never have been heard by this jury. Now, Judge Kaczynski you then ask well why don't we just short circuit this and do it right here. Exactly right. And you did that in Daubert. We had related  Nguyen and Judge O'Scanlan. Both of you asked at a couple of different points. I did a lot of things. We did a lot of things in Daubert. You did a lot of things in Daubert. You did a lot of things in Daubert. Point made. I can see that. Some right, some wrong. Don't go there. The question was asked. All right. You just found wrong. Well that was the first time around. On the remand everything went fine. Now, do you agree you're asked that the record is complete on these Daubert issues? You know you never got told oh no, there are gaps, there are gaps. You never got told well the judge might decide we need a special master. What is this about the judge might decide we need a special master? This is a case as Judge Nguyen you said depended on the experts. And if they're out it's game over. And he said yes to that too. And then so we have the question again. Why can't we do this? You can. And it's not going to be that difficult because it is going to be Dr. Millett. You decide Dr. Millett is out this case is over. Now. But Dr. Millett is not the mail order Ph.D. Dr. Millett strikes me as a close question. No. And here's why he's not. Because Dr. Millett was the developer of the very protocol he didn't follow. Which means you don't have extrapolatability. Not only that the Michigan State tests and the Michigan State tests confirm it's not extrapolatable. This is the Schuttle case. It's controlling. If you've got an opinion which is based on data which has extrapolation problems and there is not a demonstration that it's appropriately to extrapolate nonetheless to the facts of the case at hand it's out. And Dr. Millett has so many problems. He's got he does he tests with dry felt he tests with a zero humidity environment he blasts away at the poor felt piece at a rate a worker would you know if a worker did that in a blowdown it'd be 10,000 hours. He does it at a perpendicular angle when you're supposed to shoot across it. And by the way he admitted at trial that well yes if you shoot across it you're not going to release very much. He has so many problems. I don't think that's going to be a close call. Now there's been discussion about well how you know those problems are pretty typical in the battle of the experts I agree they're typical. But why why aren't those questions of weight not admissibility? Oh no they're reliability questions because they show that you can't extrapolate. The judge told the jury that this was not a replication of the Mill environment. And then he said and this by the way goes to the notion that there was dauber balancing going on here. Let's focus on the non-balancing with Millett. When it got to the time for the jury to hear the opinions he says to the jury these tests don't replicate the Mill environment. The plaintiffs will say you can still extrapolate. The defendants will dispute that. Ultimately you decide what to do. The only thing he didn't say was I'm giving a reliability issue to you. The reliability issue is supposed to give you the extrapolation issue which is supposed to be decided by the court in the first instance. I ask why do we remand and delay a case further when you are in just as good a position in this case to decide the experts issue. Send it back for a special master to consider new experts. That's just that's guaranteeing a new trial. Because we can't reconvene the jury as at least two of you have pointed out. We can't do that. I think I did it twice. Yes. One last point on harmless errors. You're told oh there's not a harmless this is harmless there's no problem here and as an example you're told we objected to evidence about every fiber and that was excluded. Yeah we won that one but we lost the notion of opinions which say anything over ambient and we had major challenges to that. Thank you. Your honors thank you for your time. Okay just all those in support we're adjourned.
judges: Kozinski, O'scannlain, McKeown, Fletcher, Tallman, Rawlinson, Bybee, Smith, Smith, Nguyen, Watford